IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 10-cv-00001-WDM-CBS

DAVID GERAS,

     Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

     Defendant.

---

## ORDER ON PARTIAL MOTION TO DISMISS

Miller, J.

This matter is before me on the Partial Motion to Dismiss Plaintiff's Wage Claim Act and Contract Claims Based on Commission and Separation Pay Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 8) filed by Defendant International Business Machines Corporation ("IBM"). Plaintiff opposes the motion. Pursuant to the parties' stipulation, Plaintiff's only other claim, for bonus payments, has been dismissed. ECF No. 29. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the partial motion to dismiss will be granted.

### Background

According to the Plaintiff's Complaint[1] (Docket No. 5), Plaintiff is a former employee

---

[1]Because the commission plan and separation pay plan documents are central to the claims and are referred to in the Complaint, I consider them to be incorporated in the pleadings and by referencing them do not convert the motion to a motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a

of IBM. He alleges that under IBM's commission plan, called the "Field Management System," he is owed $156,071.98 in commissions for amounts accrued in June 2007. He also claims $5626.79 in bonuses. He also contends that pursuant to IBM's separation pay plan he is owed $35,831.60 in separation pay. He asserts claims for breach of contract and violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq.*, for IBM's failure to pay the commissions, bonuses, and separation payments.

IBM moves to dismiss Plaintiff's claims for commissions and separation pay. Jurisdiction in this court is based on diversity pursuant to 28 U.S.C. § 1332.

Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

Discussion

1.    Commissions

IBM seeks dismissal of Plaintiff's contract claim for commission payments on the grounds that the commission plan did not create an enforceable contract with Plaintiff

---

document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

regarding payment of commissions.  The parties agree that the relevant document is the

2Q Quota Letter, which is housed within the Field Management System, apparently an

online commission tracking program.    The 2Q Quota Letter includes the following

provisions under the heading "Other Important Information":

> **Right to Modify or Cancel**:  The Incentive Plan is described on the Internal Incentive Plan Website: [website address omitted] ("Plan"), and you should rely on the details provided within the Website for up-to-date information.  <u>The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it.  IBM reserves the right to adjust the Plan terms, including but not limited to any quotas or target incentives, or to cancel the Plan, for any individual or group of individuals, at any time during the Plan period up until any related payments have been earned under its terms</u>. . . . Employees should make no assumptions about the impact potential Plan changes may have on their personal situations unless and until any such changes are formally announced by IBM.
>
> **Advances Against Final Business Results**: Because your Plan quotas (or similar performance objectives) are based on a business model depending on complete, final, and accurate business results, periodic payments you may receive under the Plan are advances.  Deductions for overpayments may be made from any advances paid to you up until the payments are earned under the Plan terms.  <u>Payments are earned at the end of the quarter following the end of your Plan period (for example, for some six-month plans, the Plan period ends on June 30 and therefore the payments are earned on the following September 30th</u>; for calendar-year annual plans, the Plan period ends on December 31 and therefore the payments are earned on the following March 31st) provided the following conditions have been met: (1) you have complied with the Incentive Plan, the Business Conduct Guidelines and other IBM policies; (2) you have not engaged in any fraud or misrepresentation relating to any of your sales transactions or incentives; (3) the customer has paid the invoice for the sales transaction related to your incentive; and (4) the incentives processes and calculations are final and contain no errors.  If any of the foregoing conditions have not been met, then the incentive is not earned.

* * *

> **Significant Transactions**: IBM Management reserves the right to review and, in its sole discretion, adjust incentive payments associated with transactions which (1) are disproportionate when compared with the territory opportunity or quota size; or for which (2) the incentive payments are disproportionate when compared with the individual's performance contribution towards the transactions.

* * *

Ex. A to Partial Motion to Dismiss (Docket No. 8-2) (emphasis added).

IBM argues that the Quota Letter expressly precludes the formation of a contract and prevents the creation of enforceable promises with respect to amounts to be paid under the commission plan. Plaintiff's plan ended on June 30, 2007 and, therefore, amounts were not earned until September 30, 2007.[2] Accordingly, IBM argues, it had discretion to make any changes to the plan or payments until September 30. Moreover, IBM reserved the right to adjust incentive payments for various reasons, including disproportionality, and did so in this case. Defendant offers decisions from other jurisdictions interpreting similar IBM incentive plan documents in which the court determined that such disclaimer language was sufficient to defeat an employee's claim for commission payments under a contract theory. *Jensen v. Int'l Bus. Mach. Corp.*, 454 F.3d 382 (4th Cir. 2006); *Gilmour v. Int'l Bus. Mach. Corp.*, Case No. 2:09-cv-04155 (C.D. Calif., Dec. 16, 2009); *Rudolph v. Int'l Bus. Mach. Corp.*, CV 09-00428 (Ill. Ct. Cl., August. 21, 2009); *see also Schwartzkopf v. Int'l Bus. Mach., Inc.,* Case No. C 08-2715 JF (HRL), 2010 WL 1929625 (N.D. Calif., May 15, 2010) (attached as Exh. A to Defendant's Notice of

---

[2]Plaintiff's employment with the company ended in August 2007.

Supplemental Authority, ECF No. 26).

In response, Plaintiff offers extrinsic evidence to argue that IBM did not adjust or modify the plan as a plan, *i.e.*, by changing quotas or target incentives, but rather simply notified Plaintiff that he would not receive any further commissions for the quarter ending June 30. Plaintiff further argues that reserving the right to adjust plan terms does not mean that IBM can adjust an employee's payment. Plaintiff contends that, at a minimum, "there is an ambiguity as to what rights the contract provided." Response Brief (Docket No. 11) at 7. With respect to the disclaimer language, Plaintiff argues that "when understood in context, IBM states that the particular commission rates identified in a plan do not constitute a promise to make payment under that rate," in other words, that the language expressly excluding the formation of a contract applies only to the commission rates. Response Brief at 8-9. He also appears to contend that because IBM did not expressly inform him that it was relying on the "Significant Transactions" clause of the Quota Letter, it did not have the right to adjust his final commission payment. Finally, Plaintiff advances an alternative theory based on an implied covenant of good faith and fair dealing.

I first address the extrinsic evidence submitted by Plaintiff. I have discretion to accept this evidence and convert the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). If the motion is so converted, all parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* I conclude that the issue of whether IBM's commission plan contained a contractual promise to pay incentive amounts can be determined as a matter of law in these

5

circumstances and Plaintiff's evidence does not alter my analysis. Accordingly, I will exclude Plaintiff's proffered evidence and consider the issue under the standards of Rule 12(b)(6).[3]

A party attempting to recover for breach of contract must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). "Contractual obligations arise from promises made between parties and are enforced to protect the expectancy interests created by those promises." *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 483 (Colo. App. 2003) (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)).

The commission plan here is essentially a type of employment manual or policy. It is well established in Colorado law that an employee seeking to establish that a manual resulted in a contract must establish that the employer's actions manifested to a reasonable person an intent to be bound by the provisions of the manual or handbook. *Evenson v. Colorado Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 408-9 (Colo. App. 1993). A contract disclaimer in an employment manual or policy can defeat a claim of implied contract. *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 248 (Colo. App. 2006). Although this issue typically arises in cases involving termination of employment, the same principles appear to be applicable here. *See, e.g., Shaw v. Sargent Sch. Dist. No. RE-33-J ex rel. Bd. of Educ.*, 21 P.3d 446 (Colo. App. 2001) (examining whether employer's early retirement

---

[3]Review of the material indicates that consideration of it would not change my analysis.

policy gave rise to enforceable contract). Determination of whether an employment policy gives rise to contractual expectations is a question of law for the court. *Shaw*, 21 P.3d at 449 ("The interpretation of a written document is a question of law.").

Examining the language of the Quota Letter as a whole, I conclude that Plaintiff does not have an enforceable contract with respect to the commission payment he claims. The conspicuous disclaimer negates the existence of a contract. In addition, IBM reserved the right to change both the terms of the incentive plan and to make adjustments to individual payments based on any number of factors, including disproportionality, errors, and lack of payment. Indeed, the disclaimer expressly provides that IBM does not promise to make any distributions under the plan and reserves the right to cancel the plan even after sales have closed. Interim payments are categorized as "advances" pending final determination of commission amounts, which could thereafter be reclaimed or deducted from future commissions. Because IBM reserved to itself discretion to adjust or cancel the amounts until payment has been earned (September 30, 2007) under the terms of the Plan,[4] it appears to have been entirely within the company's discretion to determine that Plaintiff would not receive the final payment he believed was owed.

Although it applied Virginia law, the Fourth Circuit in *Jensen* applied similar reasoning in concluding that IBM had not made an enforceable promise to pay commissions under a similar software sales incentive program. 454 F.3d at 385. The plaintiff in *Jensen* had a quota letter that contained the following disclaimer: "[T]his program

---

[4]The Quota Letter provides that payments "are earned at the end of the quarter following the end of your Plan period (for example, for some six-month plans, the Plan period ends on June 30 and therefore the payments are earned on the following September 30th . . .)."

does not constitute a promise by IBM to make any distributions under it. IBM reserves the right to adjust the program terms or to cancel or otherwise modify the program at any time during the program period, or up until actual payment has been made under the program." *Id.* The *Jensen* court held: "By this language, IBM did not invite a bargain or manifest a 'willingness to enter into a bargain.' To the contrary, it manifested its clear intent to preclude the formation of a contract." 454 F.3d at 388. In particular, the court relied on the fact that the plaintiff was informed he could not rely on the intended commissions until actual payment was made, that IBM could modify or even cancel the program at any time before commissions were paid, and that the plaintiff was not entitled to any payment in advance of his actual receipt of the payment. *Id.* "Thus, IBM made clear that there were no conditions that [the plaintiff] could satisfy to create a binding contract *before IBM decided to pay him.*" *Id.* (emphasis in the original). The Quota Letter here contains quite similar disclaimer language to the pertinent provision in *Jensen* and also reserved to IBM the same unilateral rights and discretion up until a specific deadline, i.e., the specific date payment was "earned," which had not passed when the payment decision was made.[5] Given this authority and lack of persuasive argument or case law from Plaintiff, I conclude that Plaintiff's contract claim for commissions fails.

As Plaintiff concedes, if he is not entitled to the commissions under contract, then his Wage Claim Act claim also fails. Therefore, both claims will be dismissed.

2.      Separation Pay

---

[5]The supplemental authority cited by Defendants (ECF No. 26) has virtually identical language as here and was determined to preclude the formation of a contract. *Schwartzkopf v. Int'l Bus. Mach., Inc.,* Case No. C 08-2715 JF (HRL), 2010 WL 1929625 (N.D. Calif., May 15, 2010) at *5 - *8.

Plaintiff's claim for separation pay is similarly based on a separation pay program or plan issued by IBM. The separation pay plan has been provided. See Ex. D to Partial Motion to Dismiss (Docket No. 8-5). Its terms are not in dispute. A condition of receiving separation pay is that an employee must sign a release of claims. *Id.* at 11 ("In order to receive any payments or other benefits under the IBM Individual Separation Allowance Plan, an employee must sign the General Release (Release) and other forms relating to his/her separation."). Plaintiff's complaint does not allege that he ever accepted the offer of separation pay and indeed in his response brief he appears to concede that he did not sign the release. Response Brief at 12 ("When IBM released Mr. Geras, it said nothing about its intent regarding separation pay except it would not make this payment unless Mr. Geras signed a release."). Plaintiff offers no argument to rebut IBM's showing that Plaintiff refused to comply with a condition for the receipt of separation pay. Rather, he states that the separation pay plan is subject to the Employee Retirement Income Security Act ("ERISA") but provides no argument or authority to explain why this is relevant to any issue. Accordingly, I agree that Plaintiff's contract claim for separation pay fails. In addition, the Wage Claim Act claim for separation pay fails on this basis and because the Wage Claim Act does not cover separation pay. C.R.S. 8-4-101(8)(b) ("'Wages' or 'compensation' does not include severance pay.").

3.  Attorneys' Fees

Because Plaintiff's Wage Claim Act claims fail, IBM seeks attorneys' fees as provided by statute. Under the statute, if the employee "fails to recover a greater sum than the amount tendered by the employer, the court may award the employer reasonable costs and attorney fees incurred in such action . . . ." C.R.S. § 8-4-110(1). Plaintiff argues that

I should not award fees because the claims were not frivolous.

Nothing in the statute prescribes a frivolousness standard and an award of fees appears to be purely discretionary. The statute's precursor has been interpreted to protect an employer against nuisance litigation. *See Hartman v. Freedman*, 197 Colo. 275, 280, 591 P.2d 1318, 1322 (1979); *Voller v. Gertz*, 107 P.3d 1129, 1132 (Colo. App. 2004). I conclude that a partial award of attorneys' fees is appropriate here. Although the issue of Plaintiff's entitlement to commissions presented legitimate issues, his claim for separation pay appears to have been without legal basis from the outset. Plaintiff refused to comply with a condition for receiving separation pay and the Wage Claim Act expressly excludes separation pay from its coverage. Therefore, I agree that IBM is entitled to its fees for this portion of the litigation. IBM shall be awarded fees and costs incurred in connection with filing its partial motion to dismiss as to the separation pay claim.

Accordingly, it is ordered:

1.    IBM's Partial Motion to Dismiss Plaintiffs' Wage Claim Act and Contract Claims Based on Commission and Separation Pay Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 8) is granted.

2.    Plaintiff's contract and Wage Claim Act claims based on claims to commissions or separation pay are dismissed with prejudice. No further claims remain pending.

3.    IBM is awarded its attorneys' fees and costs associated with that part of the partial motion to dismiss addressing the separation pay issue. IBM shall file an affidavit in accordance with my Pretrial and Trial Procedures and with the local rules of this court.

4.      IBM may have its costs.

DATED at Denver, Colorado, on July 21, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge